**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Denise Fultz,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　Defendant. | No. CV-17-03122-PHX-DGC<br><br>**ORDER** |

Plaintiff Denise Fultz seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied her disability insurance benefits under §§ 216(i) and 223(d) of the Social Security Act. The Court finds that the administrative law judge's ("ALJ") decision is based on legal error, and will remand for further proceedings.

**I.　Background.**

Plaintiff is a 66 year old female who previously worked as a vice president, manager of human resources, and human resources administrator. A.R. 30, 42. Plaintiff applied for disability insurance benefits on October 10, 2013, alleging disability beginning on August 16, 2011. A.R. 18. On June 24, 2015, Plaintiff testified at a hearing before an ALJ. *Id.* A vocational expert also testified. *Id.* On November 24, 2015, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social

Security Act. A.R. 18-31. This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on July 14, 2017. A.R. 1-6.

## II. Legal Standard.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* "The burden is on the party claiming error to demonstrate not only the error, but also that it affected [her] substantial rights." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To establish disability, the claimant must show that (1) she is not currently working, (2) she has a severe impairment, and (3) this impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") prevents her performance of any past relevant work.

If the claimant meets her burden through step three, the Commissioner must find her disabled. If the inquiry proceeds to step four and the claimant shows that she is incapable of performing past relevant work, the Commissioner must show at step five that the claimant is capable of other work suitable for her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016, and has not engaged in substantial gainful activity since August 16, 2011. A.R. 20. At step two, the ALJ found that Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease with lumbar spinal stenosis, status post right shoulder clavicle excision and decompression in 2013, status post repair of a left shoulder rotator cuff tear in 2011, and obesity. A.R. 20. The ALJ acknowledged that the record contained evidence of cystocele, urinary incontinence, fecal incontinence, and anxiety, but found that these were not severe impairments. A.R. 21-25. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. A.R. 25. At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work with some additional limitations, and was able to perform her past relevant work as a vice president, manager of human resources, and human resources administrator. A.R. 25, 30.

**IV. Analysis.**

Plaintiff makes three arguments: (1) the ALJ erred by rejecting her treating physician's opinions, (2) the ALJ improperly credited opinions of the state agency reviewing physicians, and (3) the ALJ erroneously discredited Plaintiff's symptom testimony. Doc. 14 at 9-22. Defendant summarizes the ALJ's decision, but offers few specific counterarguments. *See* Doc. 15.

**A. Dr. Abrams.**

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the

claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(1), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(1)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830. Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings," *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted), or if there are significant discrepancies between the physician's opinion and her clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quotation marks and citation omitted). Under either standard, "[t]he ALJ must do more than offer [her] conclusions.

He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation marks and citation omitted).

Dr. Abrams is a treating physician who issued two opinions that Plaintiff was unable to work. A.R. 613-14, 826-27. Because these opinions are inconsistent with those of the state agency non-examining physicians, they can be rejected for "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31.

### 1. November 2013 Opinion.

Dr. Abrams opined in November 2013 that Plaintiff's physical limitations prevented her from doing any work. A.R. 613-14. The ALJ discredited this opinion because it "was provided within one month of the claimant's lumbar procedure and the claimant had not yet recovered." A.R. 29. Plaintiff contends that this reason is insufficient because Dr. Abrams did not limit his opinion to any period of time, and there is no evidence that subsequent improvement rendered this opinion invalid. Doc. 14 at 11. The Court agrees. The problem is a lack of explanation. The ALJ's analysis falls well short of the "detailed and thorough" analysis the Ninth Circuit requires. *Revels*, 874 F.3d at 654.

Defendant's citation to *Carmickle v. Commissioner of the Social Security Administration*, 533 F.3d 1155 (9th Cir. 2008), is unavailing. Doc. 15 at 12. *Carmickle* upheld an ALJ's decision to discredit the long-term significance of a doctor's "two-week excuse from work," especially in light of the doctor's subsequent opinion that the claimant could return to full-time work. 533 F.3d at 1165. Although Plaintiff may have been in recovery from surgery at the time, Dr. Abrams' November 2013 opinion had no time limit and the ALJ's decision does not indicate that Dr. Abrams subsequently cleared Plaintiff to work. A.R. 29. Nor does the ALJ explain why a treating physician would be unable to render an opinion about a patient's long-term work prospects within a month of lumbar surgery. A.R. 29. If the ALJ had reasons for this view, she did not include them

in her decision. A.R. 29. The Court concludes that the ALJ's single, unexplained reason to reject the November 2013 opinion is not specific, legitimate, and supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

### 2. May 2015 Opinion.

Dr. Abrams opined in May 2015 that Plaintiff's physical limitations prevented her from doing any work. A.R. 826-27. The ALJ discredited this opinion for three reasons. The ALJ first asserted that the opinion portrays a "virtually bedridden" patient. A.R. 29. Plaintiff argues that this mischaracterizes Dr. Abrams' findings, which indicate that Plaintiff could sit, stand, and walk for two hours of a work day. Doc. 14 at 11-12. The Court agrees. The ALJ neither described how Dr. Abrams' opinion portrayed a bedridden patient nor explained why this would make the opinion unbelievable.

The ALJ next emphasized that the May 2015 opinion is inconsistent with Dr. Abrams' notes reflecting normal neurological findings and a negative straight leg raise. A.R. 29. Plaintiff argues that the ALJ failed to explain why these isolated findings are significant, especially in light of other severe symptoms and treatment. Doc. 14 at 12. The Court agrees. The ALJ cited 23 pages of treatment notes to support this reason, but without a word of explanation as to how specific clinical findings were inconsistent with Dr. Abrams' limitations.

The ALJ finally noted that the May 2015 opinion is inconsistent with Plaintiff's decision not to take pain medications. A.R. 29. Plaintiff contends that the ALJ cited a single treatment note from November 2013, which was approximately 17 months before Dr. Abrams' May 2015 opinion. Doc. 14 at 12-13. The Court agrees. The ALJ did not explain how one treatment note regarding pain medication undermines a medical opinion rendered 17 months later.

The ALJ's three reasons to discredit the May 2015 opinion also fall well short of the "detailed and thorough" analysis the Ninth Circuit requires. *Revels*, 874 F.3d at 654. The Court concludes that the ALJ failed to provide any specific and legitimate reason to reject the May 2015 opinion.

### 3. Whether Error was Harmless.

Even if the ALJ committed error in improperly weighing a medical opinion, that error will be harmless if the Court can "conclude from the record that the ALJ would have reached the same result absent the error." *Molina*, 674 F.3d at 1115; *see also Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). The ALJ gave little weight to the opinions of a treating physician who determined that Plaintiff had substantial limitations that prevented her from working, and the ALJ acknowledged at the hearing that Dr. Abrams' opinions describe someone who was incapable of full-time work. A.R. 72. The Court cannot conclude that the ALJ would have reached the same conclusions had she properly evaluated Dr. Abrams' opinions. The ALJ's error was not harmless.

### B. State Agency Reviewing Physicians.

The ALJ accorded significant weight to the opinions of state agency reviewing physicians that Plaintiff was capable of performing some range of light work and was therefore not disabled. A.R. 29, 89-93, 109-113. Plaintiff contends that Dr. Abrams' opinions are more reliable and accurate. Doc. 14 at 13-15.

Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040-41. But Plaintiff cites no authority for the proposition that an ALJ commits error merely by crediting a non-examining physician's opinion. *See* Doc. 14 at 13-15 (citing 20 C.F.R. § 404.1527(c) (describing relevant factors); *Diedrich v. Berryhill*, 874 F.3d 634, 639 (9th Cir. 2017) (error not to call a medical advisor when the onset of disability must be inferred from the record); *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (ALJ committed error by *rejecting* an opinion without sufficient reasons); *Garrison*, 759 F.3d at 1013 (9th Cir. 2014) (error to rely on a non-examining physician's opinion to *discredit* a treating physician's opinion); *Orn*, 495 F.3d at 631 (describing comparative weight of different medical opinions); *Reed v. Massanari*, 270 F.3d 838, 842-45 (9th Cir. 2001) (error to refuse to order a consultative examination because "both available examiners with the appropriate

specialization conclude that 'everybody' is disabled")). And Plaintiff does not contend that the non-examining physician opinions are totally unsupported by the record.[1] Plaintiff appears to ask the Court to reweigh the medical evidence, but the Court declines to do so. *See Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

### C. Plaintiff's Symptom Testimony.

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Revels*, 874 F.3d at 655 (citing *Garrison*, 759 F.3d at 1014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of her alleged symptoms, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.*

The ALJ described Plaintiff's symptom testimony:

> At the hearing, the claimant testified she was unable to work due to her reported incontinence, back pain, difficulties with gait and balance, and side effects. The claimant experienced dry mouth and nausea from her prescribed medications. The claimant alleged she only slept for four hours total and was tired all the time. The claimant reported she could not lift more than a gallon of milk and stated she experienced ongoing pain, some days worse than others.

A.R. 26.

---

[1] Plaintiff argues: "Instead of assigning proper weight to Dr. Abrams's assessments, the ALJ assigned 'significant weight' to the opinions of the state agency nonexamining doctors. The ALJ stated their opinions were 'consistent with the overall record and supported by objective medical evidence, examination results, and the claimant's reported activities.' The ALJ did not provide citation to the record to support this conclusion." Doc. 14 at 13 (citations omitted). But Plaintiff cites no authority to suggest that an ALJ may credit the opinion of a non-examining doctor only if she cites portions of the record that support the opinion.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent and credible. A.R. 26. As an initial matter, Plaintiff contends that the ALJ's determination is error because she supported it with a recitation of the medical evidence. Doc. 14 at 16-17. This mischaracterizes the ALJ's decision. The ALJ provided eight reasons to support her finding, and Plaintiff disputes seven of them.

### 1. First Reason.

The ALJ noted that Plaintiff's claim of disability starting in August 2011 is inconsistent with medical records showing that she could ambulate without an assistive device or prescription pain medication as late as November 2013. A.R. 26. Plaintiff counters that she "was not prescribed a cane until March 2014, so not using a cane in November 2013 is irrelevant." Doc. 14 at 17. Plaintiff's argument misses the mark. The ALJ reasoned that Plaintiff's claim of total disability starting in August 2011 is inconsistent with her ability to ambulate without assistance until at least November 2013. Plaintiff provides no argument to undermine this reasoning, and the Court finds that it is a clear and convincing reason to reject Plaintiff's testimony.

### 2. Second Reason.

The ALJ asserted that Plaintiff's alleged physical limitations are inconsistent with physical therapy treatment notes that reflect positive progress and non-severe symptoms. A.R. 27. Plaintiff contends that her gradual and limited progress in physical therapy "does not mean that [her] entire symptom testimony about her impairments was invalid." Doc. 14 at 18. But the ALJ acknowledged that Plaintiff's progress was gradual (A.R. 27), and Plaintiff does not attempt to rebut the ALJ's reasonable conclusion that it is inconsistent with her alleged limitations.[2]

---

[2] Plaintiff contends that the ALJ erred by citing a "large swath[] of the medical record" to support this reason. Doc. 14 at 18. Although the ALJ cited 81 pages of physical therapy records in an introductory sentence, the subsequent analysis identified specific portions of that record. A.R. 27-28. Plaintiff also contends that the ALJ cited a record that does not support her conclusion. Doc. 14 at 18 (citing A.R. 590). But the

- 9 -

### 3. Third Reason.

The ALJ noted that Plaintiff's "subjective allegations of pain and limitations were only partially supported by objective examination findings, which were minimal." A.R. 28. Plaintiff does not directly address this reason.

### 4. Fourth Reason.

The ALJ asserted that Plaintiff's continued receipt of unemployment benefits is inconsistent with her claim of disability. A.R. 28. Specifically, Plaintiff certified that "she was able, willing, and looking for work" when she received unemployment benefits during the period of alleged disability. A.R. 28. The Ninth Circuit has found that "[c]ontinued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds [herself] out as capable of working." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). But the Ninth Circuit has not found that continued receipt of unemployment benefits is a clear and convincing reason, sufficient on its own, to reject a claimant's testimony. The Ninth Circuit has held that receipt of unemployment benefits will undermine a claimant's alleged inability to work full-time only when the record shows that the claimant held herself out as available for full-time work. *Carmickle*, 533 F.3d at 1161-62 ("First, while receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime, the record here does not establish whether Carmickle held himself out as available for full-time or part-time work. Only the former is inconsistent with his disability allegations. Thus, such basis for the ALJ's credibility finding is not supported by substantial evidence." (citations omitted)).

The record here does not establish whether Plaintiff held herself out as available for full-time or part-time work. Therefore, the ALJ's reliance on this potential inconsistency in discounting Plaintiff's credibility was error.[3]

---

ALJ did not rely on that record to support this reason. A.R. 28 (citing the record to support a separate finding that Plaintiff's physical examinations were "unremarkable").

[3] The ALJ suggested at the hearing that Plaintiff received unemployment benefits from 2011 until the first quarter of 2013. A.R. 44-45. The record does not support this assertion. A.R. 193-94 (relevant records cover only the fourth quarter of 2012 to the first quarter of 2015). The record shows that Plaintiff continued to seek work for an

### 5. Fifth Reason.

The ALJ noted that Plaintiff's claims of disabling side effects from her prescribed medications are not supported by the record. A.R. 28. Although her treating physicians opined to the existence of such symptoms, the ALJ reasoned that the record is devoid of any evidence of associated limitations. A.R. 28. Plaintiff contends that the absence of documentation is immaterial. Doc. 14 at 20. The Court agrees. The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," including medication side effects. A.R. 26. But Plaintiff is not required to present objective medical evidence of the severity of her side effects. *See Revels*, 874 F.3d at 655. The Court therefore cannot conclude that this is a clear and convincing reason to reject Plaintiff's symptom testimony.

### 6. Sixth Reason.

The ALJ noted that Plaintiff's claims of shoulder limitations are inconsistent with her decision not to take any medications for her shoulder pain prior to surgery. A.R. 28. But the ALJ's record citation only supports the conclusion that Plaintiff was not taking pain medication after her shoulder surgery. A.R. 342. Because the ALJ apparently misread the treatment record, the Court finds that this reason is not supported by substantial evidence in the record.

### 7. Seventh Reason.

The ALJ noted that Plaintiff's claimed disability is inconsistent with her representation at a May 2013 physical therapy appointment that she had recovered well from her 1996 cervical spine fusion and 2011 shoulder surgery. A.R. 29. Plaintiff does not address this reason. The Court has reviewed the record the ALJ cited (A.R. 343) and finds that it supports the ALJ's reasoning.

---

unspecified period of time after being laid off in 2011. A.R. 44-45. She testified that her efforts failed due to age discrimination and her health problems. A.R. 47.

### 8. Eighth Reason.

The ALJ finally noted that Plaintiff's "testimony regarding the intensity, persistence, and limiting effects of her impairments' symptoms were inconsistent with her reports to a treating source." A.R. 29. Specifically, the ALJ emphasized that Plaintiff told a gynecological nurse practitioner in April 2015 that she was in a "great place and felt her life was very fulfilled[,] . . . her health had been good overall this year[,] . . . [and] the only issue she had was urinary incontinence and frequency as well as bowel issues." A.R. 29. Plaintiff made "no mention of pain or weakness." A.R. 29. Plaintiff contends that this isolated record is insufficient to undermine her credibility, but she makes no argument that the ALJ ignored other evidence in the record. Doc. 14 at 20-21. The Court has reviewed the record the ALJ cited (A.R. 822) and finds that it supports the ALJ's reasoning.

### 9. Conclusion.

Four of the ALJ's eight reasons to discredit Plaintiff's symptom testimony are clear and convincing and supported by substantial evidence in the record, and a fifth is not directly addressed by Plaintiff. Three reasons are inadequate, but the Court cannot conclude that these inadequacies are so significant as to undermine the ultimate credibility determination. There remains substantial evidence supporting the ALJ's credibility determination, and the errors do not affect the ultimate nondisability determination. *See Molina*, 674 F.3d at 1115. The ALJ's errors were harmless.

## V. Scope of Remand.

The ALJ erred in her consideration of Dr. Abrams' medical opinions. Plaintiff contends that, crediting Dr. Abrams' opinions as true, the Court must remand for an award of benefits. Doc. 14 at 15, 22. Defendant counters that the appropriate remedy is a remand for further proceedings. Doc. 15 at 14.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this

rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

> The three-part analysis . . . is known as the "credit-as-true" rule. First, we ask whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, we determine whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal quotation marks and citations omitted). *Leon* emphasized that the Court has discretion to remand for further proceedings even if it reaches the third step in the process. *Id.* "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quotation marks omitted).

Applying step two of the Ninth Circuit's test, the Court concludes that outstanding issues must be resolved before a disability determination can be made. The ALJ properly discredited Plaintiff's testimony regarding her own limitations, and Plaintiff has not provided a basis for finding error in the ALJ's reliance on the opinions of non-examining physicians. But the ALJ did err in discrediting Dr. Abrams' opinions, which creates an unresolved outstanding issue: how should that opinion be weighed against the lack of credibility in Plaintiff's disability testimony and the opinions of the other physicians? The Court concludes that further proceedings on these issues would be useful, and will remand for such proceedings.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this action.

Dated this 17th day of July, 2018.

_____
David G. Campbell
United States District Judge